May it please the Court, Anthony Bornstein on behalf of the Appellant, Charles Pope. Your Honors, in making the case that Charles Pope should have his day in federal court, I'd like to first address the reasons the case is not moot, and secondly, address the exhaustion issue. I think to fully understand why the case is not moot, it would help to just distill this 22-page pro se petition into what I think are the most meritorious federal habeas corpus claims. There is a claim of an ex post facto violation in conducting the second prison term hearing in 2011, at which the parole board applied what Mr. Pope asserts is a more harsh and onerous standard, and then aggravating his sentence based on finding the factor that the victim was vulnerable. He asserts an ex post facto violation in that conduct. Did that factor exist in 1987? Well, what happened was no, no, and the short answer is no, that when the board first held the prison term hearing in 1987, it found no such aggravator. It found the victim was not vulnerable. The district attorney did not urge that ground. He did not. But it existed as a ground for aggravation for the board of prison, the parole board. Applying the standard that then existed in 1987, it did not exist in that the board determined there was no vulnerable victim. You're not answering the question. Did the aggravating factor exist in 1987? Oh, I see, I see. As a legal factor, it existed. We're interested in legal factors in the courtroom. I know, but as this court held in Brown v. Palmatier, 2004 case, applying a new standard that is more onerous can result in an ex post facto violation. But it's not a new standard. It's an old standard that hadn't been applied. Correct. The factor is on the books, but the standard that was used to find the factor and then enhance the sentence was... The standard was that the victim was intoxicated. The standard was vulnerability of the victim. In this case, the finding... Right. The standard existed. The victim was intoxicated in 1987. They hadn't applied it in 1987, and they applied it in 2011. What your argument is, is it waiver or how is it ex post facto? In that the status of the victim did not change. The victim was either vulnerable or not when the crime happened. In 1987, applying the law, the facts, the standard, then the parole board found that the victim was not vulnerable. Then when ordered to conduct a new prison term hearing and look back in time, the board then found that the victim was vulnerable. Is the board bound by its 1987 finding that the victim was not vulnerable? Constitutionally, yes. Why? Because if it applies a more onerous standard to enhance the sentence or the prison term, then that would be an ex post facto violation. I think I've got your argument. Okay. And related to that, either alternatively or in addition, Mr. Pope contends that that is a due process violation as well, whether it's based on vindictiveness as a result of winning in the Oregon Supreme Court to obtain... Well, to make an ex post facto argument, you have to have some sort of reliance argument. I mean, you could say, well, you know, he commits the crime. He doesn't know that these are the consequences, possible consequences, because the law has been changed. But he doesn't have any such argument, right? The crime was, so the law was at the time he committed the crime just as it is today. I'm not sure I see where... On a theory as in the Brown v. Palmateer case, the ex post facto would be in a more onerous standard for vulnerability of the victim, which leads to a 108-month increase in the sentence, a factor which was not found, a prison term which was thought thereby legally inapplicable when it originally held the prison term. But to counter the mootness argument, Mr. Pope should have, just like we're having today, an opportunity to present those constitutional arguments, facing all of the questions that the court is posing today, to the federal district court and should be allowed to argue the merits of the due process and the ex post facto claims to that court. Should the court ultimately agree that he's right on either of the claims, the court could fashion meaningful relief. But sir, doesn't he have to exhaust his remedies on state level first? Ordinarily, claims should be exhausted. Why should he not be required to exhaust at state level first? Because the state's corrective process is ineffective to vindicate his federal constitutional... Why is it ineffective? Really for two reasons. And this case has evolved over time. But the delays that occurred in the state administrative and the state judicial process have resulted in an unreasonably long time to have his case heard. And now... He was convicted under an aggravated murder. There are two penalties under Oregon law. Death or life imprisonment. A minimum of 30 years. Janowski got rid of the 30 years minimum. But he still has a life sentence. Right? He was originally got a release... A parole release date in 2016. That was his original sentence. He now got a release date of 2014 with an exit examination in January 2014. They found he had a mental defect which made him a threat to society. And they postponed his release until July 27, 2016. Why isn't he where he was back in 1987? He should be entitled to a... First of all, it's the board that determines the ultimate length of the sentence. While there is an outer maximum in this state's indeterminate sentencing scheme, it's the board that really, as a practical matter, determines how long the prisoner serves in custody in the prison. He should be entitled to a hearing and a process that's free of constitutional taint. And as I've maintained in my brief, if the court, the federal court finds that there was federal constitutional error in the prison term hearing in 2011, that would surely taint the resulting exit interview in that the board would treat him more harshly. If the board is ordered to, for example, as one form of relief... But his exit interview in January 2014 didn't postpone his release date, his parole release date, because of the aggravating circumstances of the murder. The reason given was that because of a mental condition, he was a threat to the community. The two had nothing to do with each other. Well, I would respectfully disagree, Your Honor. I submit that it does have an effect in that the board, as part of its holistic appraisal of the prisoner's releasability, determines the nature of the crime. And that very clearly was addressed at the hearing in an extensive... So you think that the mental health finding is a pretext? No, no, the mental health finding is one aspect of it. A prisoner can be found to have a mental defect or condition, but can still be released if the conditions are found which can adequately protect the community. If the board, however, determines that there's something more aggravated about the crime, and therefore more heinous, if you will, about the offender, it would be less likely to find that they could be controlled, that they could be safe in the community. Was that part of the parole board's finding? It is. It is. What the board determines is whether there's a condition that makes it too dangerous, if you will, to release the prisoner into the community. The board could find that he's got a certain mental health condition, but that he's still releasable. And in making that determination, the board spends considerable time going over the facts of the crime. And it did that in this particular January interview. And so that's how the finding of the aggravating factor in the prison term hearing taints, as I submit the results of the exit interview, and the court can fashion a meaningful relief. I see that I'm out of time, but I would request just one last, permission to make one last remark about the interplay of the exhaustion and the mootness issue. Take a minute. Thank you. The state should not be allowed to have it both ways. They should not be allowed to maintain in this court that there is this fully capable state corrective system at which the case will ultimately be resolved, and then simultaneously return to state court, down I-5, if you will, in Salem, Oregon, and argue to that court that the case is moot, that it should be thrown out on procedural grounds. Mr. Pope, that's unfair, and Mr. Pope should be allowed to have. But that's an argument you can make there, right? Well, let's take the state at its word. Assuming, arguendo, they're right, the case is moot as a matter of state law, then there will be. But the state court may decide they're wrong. And then they'll be back in this court, surely, and arguing that the case is procedurally barred from being heard in federal court. Well, no. I mean, the state court could find the case not moot and deny relief, right? That's not the position the state is taking, but if the state loses that argument and finds that the Rivas case that Mr. Sylvester so heavily relies upon is inapplicable to Mr. Pope's case, a case which they're saying is absolutely indistinguishable and controlling, then if they're right, the case is thrown out on mootness. And Mr. Pope never gets to have his claims even heard or addressed.  Thank you, Your Honor. May it please the Court, Tim Sylvester from the Oregon Department of Justice. It appears that Your Honors understand what the issue is, and so I'm not going to spend a lot of time on this. Well, could you address the mootness issue, please? Yes. I do want to point out that we have, I mentioned in a footnote in my brief, that we were in the process of filing a motion to dismiss the pending appeal in the Oregon Court of Appeals judicial review proceeding in the Oregon Court of Appeals. We have done that. As far as I know, Petitioner has not responded to it, and the Oregon Court of Appeals has not yet ruled on it. The point that we want to make is that under established Oregon law, as determined by the Oregon Supreme Court in Janoski-Fleming, and then by the Court of Appeals in Rivas v. Board of Parole, if there is any dispute about what the parole release date is, and the Petitioner inmate is arguing, I should have been considered for parole release earlier, what the Supreme Court said in Janoski-Fleming and the Oregon Court of Appeals reiterated in Rivas is that even if you are right about that, the only remedy you get under Oregon law is a remand back to the parole board to have what is called the exit interview. That is, even if Petitioner is correct that my parole release date has already expired, I should have been considered for parole two years ago, that does not mean that he is entitled as a matter of law to immediate release on parole. Rather, Oregon law requires that the parole board has to hold an exit interview to determine whether, in fact, you are entitled to. So if we have the authority to order that, why wouldn't that negate any claim of mootness? Well, I'm not sure what, see, what happened here, maybe I need to take one more step. And so in Janoski-Fleming, what happened was that the Oregon Supreme Court remanded to the parole board for it to make that determination. In this case, the exit interview already has occurred. It occurred back in January, and the parole board had this exit interview, and in accordance with Oregon law said, you are not now entitled to release, and this order is in page 534 of the extract of record. And what the board said is, and I'm quoting from the order, based on the doctor's report and diagnosis, coupled with all the information that the board is considering, the board concludes that the inmate suffers from a present severe emotional disturbance that constitutes a danger to the health or safety of the community. And based on that finding, which is the board applied Oregon revised statute 144. So would you say page 513 of the excerpt? Yeah, page 534 of the excerpt of our. 34. Yes, 534. As part of that exit interview, did the board recalculate the matrix release date? No, because at that point, the matrix release date is irrelevant. Because the matrix release date, what that determines is when you are entitled to the exit interview. When you give your release date, what the board does is it sets a prison term, and then at the end of that prison term, they set the possible, the prospective parole release date. And then six months before that prospective release date, that is when you have your exit interview. And in the exit interview, if the board then determines that you are not an appropriate person for release onto the streets, then they have the authority to set a subsequent parole consideration date. Was that done in this case? Yes. And what is that date? Now it's been set out for two years to July of 2016. So is it your representation that if we were to rule in favor of Mr. Polk, that there would be no relief that he would be entitled to other than that date that's already been set? Yes, I think so. Because the most that he, under Oregon law, again, as I was saying, if there was some error in the setting of the prison term, and therefore the calculation of the possible parole release date, if there was some error in that such that the time has already expired, the remedy under Oregon law is simply to hold the exit interview. And he has already had the exit interview. In the exit interview, they determine, based on his current psychological makeup, he is not a candidate for immediate release. Where in the record can I find the recalculated matrix release date? Well, that's on page 534. And what the board said is, right after what I had just read to you aloud, the board defers release for 24 months for a projected parole release date of July 21, 2016, for a total of 360 months. And so the board has already done that. Now, I don't know for sure, but I assume that Petitioner has now sought judicial review from this order, which he is entitled to. And that is a judicial review in the Oregon Court of Appeals. And that is now, what I would submit, that it has superseded all of the previous litigation between the parties, because the previous litigation was about ---- Where does that stand? Where does the previous litigation stand? No, no. You went to this detour. You said he is a punitive to the Court of Appeals, and then you sort of went to this detour to go past litigation, but you left the soft hanging. Okay. Well, we have, as far as the previous ---- I don't know. Okay. Stop. Okay. Stop of detour. You're talking about the current. He's appealing the order that's on 534. You want me to talk about the previous appeal? No. I want you to say the word previous again, okay? Next time you say the word previous, I'm going to ask you to sit down. Okay? Forget about the previous. Okay. I'm asking you about, you started talking about the current order. Right. Okay. And you said there's an appeal. Okay. I want you to say the word previous again. What is the status of that appeal? Well, it's not strictly speaking an appeal. It's a judicial review of the parole board order. Just be careful about that. Okay. And so ---- What's so difficult about answering the question? This is now the third time I've asked it.  If you are asking about what the order that's on 534 ---- You started saying something. You started telling us about the current status of the order. And then you went into this detour. Lawyers do that. They go through this detour where they explain past things. I want you to continue with that thought. As far as the ---- I do not know that he has filed a petition for judicial review of the order, the January 2014 order that appears in excerpt of record. Is there a time limit? I think it's 60 days. So when you were saying here he has a right to appeal or whatever it is you said, you were just sort of speculating. He has a right to appeal. It's a knowable fact because it's more than 60 days since January. Yes. Yes. So either there is an appeal pending or he has missed the deadline, right? I think that's correct. And the answer is you're standing there, you have no idea. I have no idea. You say you're vamping because you don't know the answer to the thing. I do not know the answer. So why don't you just say I don't know the answer and I will get it for you and I will provide it to the court before the end of the day by 28 January. Why don't you say that? I will say that. I will provide you the answer to that question by the end of the day, Your Honor. Okay. Thank you. I don't know that off the top of my head. You don't know? We can't squeeze blood out of a stone. I apologize, Your Honor. And in any event, if I may say just a few sentences about the exhaustion issue, this is one that is not exhausted. This fight is really about what happened in August of 2011 because previously the Oregon Supreme Court had issued the opinion in Janoski and as a result of that But that case is still pending, right? Yes. And we're sort of speculating now. You've got a motion to dismiss that. That's correct. But as far as we know, that case is still pending in the Oregon courts. That's correct, Your Honor. So I'm not sure why you need anything else. Isn't that? Well, Petitioner said it's not exhausted because he hasn't finished. Well, the reason I mention it, Your Honor, is because Petitioner is arguing that even though he has that judicial review proceeding pending, he should not be required to exhaust it because it is taking too long. And the only point I wanted to make is that it really hasn't taken that long because what we're really fighting about is what the board did in August of 2011. And most of the delay in that two years since was caused by Petitioner himself in taking a year to file his brief and taking a detour through the Court of Appeals on a premature appeal. Okay. Thank you. Thank you. You're out of time. Do you want to take a minute for rebuttal? I am out of time. Do you want to tell us about why this case is not moved because all of this stuff he's got he's hearing already? I can also provide you the status of the review. Yeah. Oh, sure. You must know. Yes. The Petitioner, Mr. Pope, has just filed what is called an exhibito, which is the form, the filled-out form, for initiating the administrative branch of the appeal, which is a precursor to any effort to go to the State Court of Appeals. So he's begun the administrative review, which is now before the same board that issued the action that he's appealing. So he's pursuing an appeal of that decision, that's 534. And isn't that what the action is? I mean, he's had his pre-release hearing. They said, we don't think you're competent to be released. I mean, I don't want to use the word competent, but basically we don't think you're mentally fit to be released. So we're pushing it back two years. Isn't that where all the action is? No. That's certainly not exhaustive, and that's certainly not taking too long to decide because, you know, he had his hearing in January, and everything that's happened since then has been delay in Mr. Pope's filing an appeal, right? Well, here's why that's not the whole ballgame. If there is, and if he persuades a federal judge that there was constitutional error, a violation of his federal constitutional rights in establishing the ultimate release date on the prison term, that would surely color how the court looks at this human being at his parole release hearing. And I've analogized it to a capital case where — But what can he get under Oregon law other than a pre-release hearing, which is what he got? I mean, he does not get automatic release. I mean, that's what the opposing counsel tells us. If you think he's wrong about that, you can tell us. But that's why I understand this. The best he can do is get from a court, other than sort of appeal for the pre-release hearing, or which you're not pursuing, is a pre-release hearing. That's the most — and he got that. What else is there for a court, federal or state, to do? Again, I rely on my analogies to the sentencing cases from this circuit and others, whereby an error in the so-called guilt phase would surely affect how a sentencer decides the fate of the defendant or the potential parolee, the prisoner. Those are vague words. You must have gone to Yale or something. You know, what is it that we can do? You know, you say affect. I don't know. This is a gut word. I mean, let's say we wanted to really help Mr. Pope right now. We couldn't order him released. I'm not saying we are. I'm just saying, you know, you've got a court to the point where a judge will say, God, yes, I want to do everything I can for Mr. Pope. We can't order him released. The most we can order, as I understand the law in Oregon, is we can order him to have a pre-release hearing, which he's already had in January, just two months ago. Well, three months ago. Well, here's the relief that I would request, and I could close on this point, Your Honor. A conditional writ of habeas corpus. Release Mr. Pope unless you provide him with a new exit interview that is untainted by federal constitutional error. I would seek in relief an order, should the court find that I'm right about the federal constitutional violation, an order striking the finding of the aggravating factor that the victim is vulnerable and therefore conducting a new exit interview. In a new exit interview, they could consider the mental condition of Mr. Pope being a threat to society, totally independent of the aggravating circumstance, couldn't they? And that would be a basis to hold him for another couple of years. It's not totally independent. That's an argument, but it's not a fact. Well, the exit interview transcript isn't before this court, but a substantial period of the exit interview is and was all about the nature of the crime, the victim. The victim's and what happens. So you would have a conditional writ of habeas corpus telling the parole board that they could have an exit interview, but they weren't to mention the aggravating circumstances of the original crime, nor consider it, nor even think about it. They can think about it, but they can't apply an aggravating factor. They can't review the case with the background of an unconstitutional finding. Why isn't the best reading of what happened is that they looked at the aggravating crime, just thought about it, but then they found this other factor that's positive, so they don't have to deal with it. They say, you know, whatever the crime was, we're not going to release him because we think he's a danger to the community. Isn't that a fair reading of what happened? Well, I think that could be a potential outcome, just like if any kind of case goes back to trial, a conviction can reoccur the second time around. But it should be free of constitutional error at the next proceeding. It should be a fresh ballgame. Thank you. Thank you. Case is now given stand submitted.
judges: Kozinski, Rawlinson, Bea